UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

Shaul Chazon, Tvita Cohen,
and S & SHARON INC.,

                     Plaintiffs,

   -against-

BANK OF AMERICA, N.A.,
BANK OF AMERICA, N.A.,
AS SUCCESSOR TO COUNTRYWIDE BANK,
FSB, THE BANK OF NEW YORK MELLON
CORPORATION, FLORIDA CAPITAL BANK
D/B/A FLORIDA CAPITAL BANK
MORTGAGE, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

                   Defendants.

-------------------------------------------------------------X

**DEFENDANT MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.'S  ANSWER AND
AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED
COMPLAINT**

Case No: 1:19-cv-00587-FB-RML

 

Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") by and through its undersigned counsel, hereby answers and responds to Plaintiffs' Shaul Chazon, Tvita Cohen, and S & SHARON INC's ("Plaintiffs") Second Amended Complaint (the "Second Amended Complaint") as follows:

## JURISDICTION AND VENUE

1.     The Court has original jurisdiction over this action because there is complete diversity between the parties under 28 U.S.C. §1332(a); and under 28 U.S.C. §1331, because it involves questions of law arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681 (FCRA), the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.,*

**RESPONSE:** MERS admits the allegations in Paragraph 1, upon information and belief.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

**RESPONSE:** MERS admits the allegations in Paragraph 2, upon information and belief.

**PARTIES**

3.      At all relevant times, Plaintiff S & Sharon Inc. has been a domestic business corporation duly organized under the laws of the State of New York.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3, as they do not relate to MERS, and therefore denies them on that basis.

4.      At all relevant times, Plaintiff Shaul Chazon was an individual residing in Brooklyn, New York and is a "natural person" and a "consumer" as that term is defined under TILA, 15 U.S.C. § 1602(i).

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4, as they do not relate to MERS, and therefore denies them on that basis.

5.      At all relevant times, Plaintiff Tvita Cohen was an individual residing in Brooklyn, New York and is a "natural person" and a "consumer" as that term is defined under TILA, 15 U.S.C. § 16020).

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5, as they do not relate to MERS, and therefore denies them on that basis.

6.      Upon information and belief, Defendant BANK OF AMERICA, N.A. ("BofA"), is not a citizen of New York, and, at all times relevant hereto, was a citizen of Delaware.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, as they do not relate to MERS.

2

7.     At all relevant times, Defendant BofA, was a banking corporation organized under the laws of the State of Delaware; its principal place of business is located at the Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, as they do not relate to MERS.

8.     Upon information and belief Defendant BofA is a publicly traded banking corporation with many public shareholders and regularly extends consumer credit subject to a finance charge or payable by written agreement in more than four installments and is a creditor as that term is defined under TILA, e.g. 15 U.S.C. § 1602(g).

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, as they do not relate to MERS.

9.     Upon information and belief, Defendant THE BANK OF NEW YORK MELLON CORPORATION ("BNY MELLON"), is not a citizen of New York, and, at all times relevant hereto, was a citizen of Delaware.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9, as they do not relate to MERS.

10.     At all relevant times, Defendant BNY MELLON, was a corporation organized under the laws of the State of Delaware; its principal place of business is located at 240 Greenwich Street, New York, NY 10286.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10, as they do not relate to MERS.

11.     Upon information and belief Defendant BNY MELLON is a publicly traded corporation with many public shareholders and regularly extends consumer credit subject to a

finance charge or payable by written agreement in more than four installments and is a creditor as that term is defined under TILA, e.g. 15 U.S.C. § 1602(g).

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, as they do not relate to MERS.

12.     Upon information and belief, at all relevant times, Defendant FLORIDA CAPITAL BANK D/B/A FLORIDA CAPITAL BANK MORTGAGE ("FLORIDA CAPITAL"), is not a citizen of New York, and, at all times relevant hereto, was a citizen of Florida.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12, as they do not relate to MERS.

13.     At all relevant times, Defendant FLORIDA CAPITAL, was a banking corporation organized under the laws of the State of Florida, with its principal place of business at 4815 Executive Park Court, Suite 103, Jacksonville, FL 32216.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13, as they do not relate to MERS.

14.     Upon information and belief Defendant FLORIDA CAPITAL is a publicly traded banking corporation with many public shareholders and regularly extends consumer credit subject to a finance charge or payable by written agreement in more than four installments and is a creditor as that term is defined under TILA, e.g. 15 U.S.C. § 1602(g).

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14, as they do not relate to MERS.

AmericasActive:14411117.1

15.	Upon information and belief, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), is not a citizen of New York, and, at all times relevant hereto, was a citizen of Delaware.

**RESPONSE:** MERS admits that it is not a citizen of New York, that it is incorporated in Delaware, and that its principal place of business is in Virginia.  MERS denies any remaining allegations contained in Paragraph 15.

16.	At all relevant times, Defendant MERS, was a corporation organized under the laws of the State of Delaware, with its principal place of business located at 1901 E Voorhees Street, Suite C, Danville IL 61834.

**RESPONSE:** MERS admits that it is incorporated in Delaware and that its principal place of business if in Virginia.  MERS denies the remaining allegations contained in Paragraph 16.

17.	Upon information and belief Defendant MERS is a privately held corporation wholly owned by MERSCORP Holdings, Inc., a privately held corporation.

**RESPONSE:** MERS admits that it is wholly owned by MERSCORP Holdings, Inc.  MERS denies the remaining allegations contained in Paragraph 17.

## SUMMARY OF CLAIMS

18.	This action involves Plaintiffs' attempt to clear their title to real property that they own, located at 1874 East 27th Street, Brooklyn, New York 11229 (the "Premises") and to recover damages that they suffered as a result of the clouding of Plaintiffs' title. In addition, in this action, Plaintiffs are attempting to recover monies paid to BofA and its predecessor in interest, Countrywide Bank, FSB ("Countrywide"), as loan payments against a loan that BofA and Countrywide never owned.

**RESPONSE:** Paragraph 18 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS admits that this lawsuit relates to the property located at 1874 East 27th Street, Brooklyn, New York 11229, denies that MERS has "cloud[ed] Plaintiff's title," and denies that Plaintiffs suffered damages as a result of any actions taken by MERS.

19. Defendant BofA, (and its predecessor in interest, Countrywide), has been asserting ownership of, and collecting principal and interest payments on, a loan and mortgage against the Premises that neither BofA nor Countrywide has ever owned. Indeed, the loan and mortgage that BofA claims to own is fraudulent and void, because it is based upon a purported consolidation of two loans by an entity that owned only one of the loans. Because a person cannot consolidate a debt that it owns with one that it does not own, the purported consolidation was void and any transfer of the consolidated debt was void and ineffective. The separate loans survive and continue to be owned by their original owners.

**RESPONSE:** Paragraph 19 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 18.

20. The loan and mortgage that BofA (and its predecessor, Countrywide) claim to own is the Consolidated, Extension and Modification Agreement, dated October 18, 2006, that purported to consolidate a loan and mortgage on the Premises granted to Defendant Florida Capital, dated August 29, 2005 (the "Florida Capital Mortgage"), with a loan and mortgage granted to Fairmont Funding, LTD. ("Fairmont"), dated October 18, 2006 (the "Fairmont Mortgage") into a single debt of $900,000.00 (the "CEMA").

AmericasActive:14411117.1

**RESPONSE:** Paragraph 20 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 20, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

21. At the time that it created the CEMA, Fairmont owned the Fairmont Mortgage but did not own the Florida Capital Mortgage, which was still owned by Florida Capital. Indeed, at no time did Fairmont ever own the Florida Capital Mortgage, nor was Florida Capital a party to the CEMA, nor did Florida Capital ever authorize the CEMA, nor did Florida Capital ever authorize Fairmont to transfer or consolidate the Florida Capital Mortgage. Thus, the CEMA was an attempt by Fairmont to convert the Florida Capital Mortgage to its own use and to consolidate it with the Fairmont Mortgage. Therefore, the CEMA was void when it was made.

**RESPONSE:** Paragraph 21 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies that the "CEMA was void when it was made" and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21, as they do not relate to MERS, and therefore denies them on that basis.

22. The CEMA was signed on behalf of Fairmont by "Steven Bakst, Assistant Vice President" and was signed on behalf of MERS by "Steven Bakst, Assistant Secretary for MERS." MERS filed the CEMA on or about December 5, 2006. *Id.* It is not known whether MERS was aware that the CEMA was fraudulent when it signed and filed it.

**RESPONSE:** Paragraph 22 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies that the "CEMA was fraudulent" and lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 22, as they do not relate to MERS, and therefore denies them on that basis.

23. There is no record that Fairmont ever assigned the CEMA to any person; however, shortly after the CEMA was executed, Defendant Countrywide opened a Home Loan Account against the Premises, in the name of Tvita Cohen and Shaul Chazon (the "Countrywide Home Loan Account"). The Countrywide Home Loan Account is not based upon any loan that Plaintiffs borrowed from Countrywide.

**RESPONSE:** Paragraph 23 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 23, as they do not relate to MERS, and therefore denies them on that basis.

24. On or about February 25, 2008, Plaintiff Tvita Cohen granted a mortgage on the Premises to Countrywide Bank, FSB ("Countrywide") to secure a Home Equity Line of Credit ("HELOC") with a maximum indebtedness of $200,000.00 (the "Countrywide Mortgage"). The HELOC is the only loan that Plaintiffs borrowed from Countrywide in connection with the Premises, and the Countrywide Mortgage is the only mortgage that the Plaintiffs ever granted to Countrywide against the Premises. On or about March 13, 2013, Defendant BofA, as assignee of the Countrywide Mortgage, filed a Satisfaction of Mortgage, dated February 22, 2013, certifying that the Countrywide Mortgage was fully paid and satisfied (the "HELOC Satisfaction").

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 24, as they do not relate to MERS, and therefore denies them on that basis, except to state that the loan documents and land records speak for themselves and are the best evidence of their contents.

25.     Therefore, the only loan that Plaintiffs borrowed from Countrywide is fully satisfied, and the Countrywide Home Loan Account, and the subsequent BofA Home Loan Account that replaced it, are not based upon any loan that Plaintiffs borrowed from Countrywide. Instead, the Countrywide Home Loan Account, and the subsequent BofA Home Loan Account that replaced it, appear to be based upon the CEMA.

**RESPONSE:** Paragraph 25 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 25.

26.     Since there is no evidence that Fairmont ever transferred the CEMA to Countrywide or to BofA, neither can claim any rights under the CEMA, and all monies received by Countrywide or BofA must be returned to Plaintiffs.

**RESPONSE:** Paragraph 26 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 26.

27.     Even if Fairmont assigned the CEMA to Countrywide, the Countrywide Home Loan Account, and the subsequent BofA Home Loan Account that replaced it were fraudulent and invalid, because they were based upon the fraudulent CEMA. This is so, whether or not Countrywide and/or BofA was aware that the CEMA was fraudulent, because the Countrywide Home Loan Account, and the subsequent BofA Home Loan Account that replaced it, were not based upon any legitimate debt. Therefore, all monies received by Countrywide or BofA must be returned to Plaintiffs.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 27 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 27.

28. Defendant Countrywide charged Tvita Cohen and Shaul Chazon principal and interest against the Countrywide Home Loan Account from late 2006 at least until June 13, 2012, when Countrywide purported to assign certain debts to BofA. All of these monies are the lawful property of Plaintiffs and must be returned. To the extent that Countrywide has collected and continues to retain such monies, Countrywide converted those monies and has been unjustly enriched at Plaintiffs' expense.

**RESPONSE:** Paragraph 28 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 28, as they do not relate to MERS, and therefore denies them on that basis.

29. On April 27, 2009, Countrywide was acquired by Defendant BofA. Consequently, Countrywide no longer exists as an independent institution and cannot be a party to this action. As Countrywide's successor, Defendant BofA is liable for any claims against Countrywide.

**RESPONSE:** Paragraph 29 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 29, as they do not relate to MERS, and therefore denies them on that basis.

30. Subsequent to acquiring Countrywide, BofA assumed ownership of debts previously owned by Countrywide.

**RESPONSE:** Paragraph 30 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 30, as they do not relate to MERS, and therefore denies them on that basis.

31.     After acquiring Countrywide, BofA notified Plaintiffs that it had acquired Countrywide and assumed ownership of Plaintiffs' debts. BofA opened a Home Loan Account in the name of Plaintiff Tvita Cohen and has been charging principal and interest against that account (the "BofA Home Loan Account"), at least since June 13, 2012.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 30, as they do not relate to MERS, and therefore denies them on that basis.

32.     BofA issues monthly mortgage statements on the BofA Home Loan Account, which state that the mortgage is on the real property located at 1874 East 27th Street, Brooklyn, NY 11229. *Id.* As of December 7, 2018, BofA claimed that the gross unpaid principal balance on the BofA Home Loan Account was $583,286.34. *Id.*

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 32, as they do not relate to MERS, and therefore denies them on that basis, except to state that the referenced mortgage statements speak for themselves and are the best evidence of their contents.

33.     The BofA Home Loan Account maintained by Defendant BofA is fraudulent and invalid, because it is based upon the fraudulent CEMA. This is so, whether or not BofA was aware that the CEMA was fraudulent, because the BofA Home Loan Account was not based upon any legitimate debt. All monies paid by any and all Plaintiffs to BofA in connection with

AmericasActive:14411117.1

the BofA Home Loan Account are the property of Plaintiffs, and to the extent that BofA has collected and continues to retain such monies, BofA has converted those monies and has been unjustly enriched at Plaintiffs' expense.

**RESPONSE:** Paragraph 33 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies that the CEMA was fraudulent, and lacks knowledge or information sufficient to form a belief as to the remainder of the allegations contained in Paragraph 33, as they do not relate to MERS, and therefore denies them on that basis.

34. Plaintiffs were never represented by counsel in connection with any of the loans, mortgages, or transactions discussed herein. They did not have counsel in connection with the Florida Capital Mortgage, the Fairmont Mortgage, the CEMA, or the Countrywide Mortgage.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and denies them on that basis.

35. When Countrywide informed Plaintiffs that it had assumed ownership of their debts and opened the Countrywide Home Loan Account, Plaintiffs did not question the assertion and did not consult counsel, as they saw no need to doubt the word of an established, trusted banking corporation. Plaintiffs regularly made the payments under the Countrywide Home Loan Account in good faith.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35, as they do not relate to MERS, and denies them on that basis.

36. When BofA informed Plaintiffs that it had acquired Countrywide and had assumed ownership of Plaintiffs' debts and opened the BofA Home Loan Account, Plaintiffs did

not question the assertion and did not consult counsel, as they saw no need to doubt the word of an established, trusted banking corporation. Plaintiffs regularly made the payments under the BofA Home Loan Account in good faith.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36, as they do not relate to MERS, and denies them on that basis.

37.     Plaintiffs had no reason to question the claims of Countrywide or BofA that they owned Plaintiffs' debts. Nor were they represented by counsel in connection with the Fairmont Mortgage or the fraudulent CEMA and had no reason to question the validity of the CEMA. The Fairmont Mortgage and the CEMA were executed at a single closing, and Fairmont persuaded Plaintiffs that it was an honest, legitimate lender. Therefore, Plaintiffs had no notice of Fairmont's fraud and conversion, nor did they have notice that the Countrywide Home Loan Account and the BofA Home Loan Account were invalid and were based upon Fairmont's fraud and conversion of the Florida Funding Mortgage. Plaintiffs continue to make payments in the good faith belief that the Court will correct all errors and return Plaintiffs' property to Plaintiffs.

**RESPONSE:** Paragraph 37 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, as they do not relate to MERS, and denies them on that basis.

38.     Plaintiffs did not learn of the fraud, conversion, and unjust enrichment in this case until late in 2018, when Plaintiffs attempted to refinance the mortgage against the Premises. At that time, the title company retained in connection with Plaintiffs' attempt to obtain the new loan discovered the several fraudulent mortgages and assignments of mortgage filed and claimed by

the Defendants and discovered the fraud and theft underlying the CEMA. Thereafter, Plaintiffs commenced this action.

**RESPONSE:** Paragraph 38 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 38.

39. In addition, on or about November 9, 2011, Defendant MERS, acting as nominee for Defendant Florida Capital, executed an Assignment of Mortgage that purported to assign the Florida Capital Mortgage from Florida Capital to Defendant BNY Mellon (the "BNY Mellon Assignment"). However, this assignment is invalid and void, because the Florida Capital Mortgage was satisfied as of November 3, 2006. Any monies that BNY Mellon received from or on behalf of Plaintiffs based upon this assignment must be returned.

**RESPONSE:** Paragraph 39 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 39, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

### Plaintiffs' Ownership of the Premises

40. On or about April 8, 1998, Plaintiff Tvita Cohen acquired the real property located at 1874 East 27th Street, Brooklyn, New York 11229 (the "Premises") by deed from Joseph and Eva Goldberger. The deed was recorded on June 11, 1998. The tax designation of the Premises is Block 6832, Lot 37 in the City of New York, County of Kings, State of New York.

**RESPONSE:** Paragraph 40 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS states that the land records speak for themselves and are the best evidence of their contents.

AmericasActive:14411117.1

41.     By a deed, dated February 10, 2002, Plaintiff Tvita Cohen transferred the Premises to Plaintiffs Tvita Cohen and Shaul Chazon. This deed was recorded on March 22, 2002.

**RESPONSE:** Paragraph 41 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS states that the land records speak for themselves and are the best evidence of their contents.

42.     On or about October 18, 2006, Plaintiffs Tvita Cohen and Shaul Chazon transferred the Premises by deed to Plaintiff Tvita Cohen. This deed was recorded on December 27, 2006.

**RESPONSE:** Paragraph 42 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS states that the land records speak for themselves and are the best evidence of their contents.

43.     On or about September 13, 2013, Plaintiff Tvita Cohen transferred the premises by deed to S & Sharon, Inc. deed was recorded on November 1, 2013.

**RESPONSE:** Paragraph 43 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS states that the land records speak for themselves and are the best evidence of their contents.

### The Florida Capital Mortgage

44.     On or about August 29, 2005, Plaintiffs Shaul Chazon and Tvita Cohen granted a mortgage on the Premises to Defendant Florida Capital to secure a loan in the amount of $460,400.00 (the "Florida Capital Mortgage"). The Florida Capital Mortgage names Plaintiffs Shaul Chazon and Tvita Cohen as Borrowers, Defendant Florida Capital as Lender, and Defendant MERS as Mortgagee of Record. *Id.* The Florida Capital Mortgage states that it secures a Note for $460,400.00, signed by the Borrowers and dated August 29, 2005. *Id.* The

Florida Capital Mortgage was recorded on September 27, 2005, in CRFN 2005000539264. Plaintiffs were not represented by counsel in connection with the Florida Capital Mortgage.

**RESPONSE:**    MERS states that the land records and referenced documents speak for themselves and are the best evidence of their contents and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44.

45.    On or about November 24, 2006, MERS, as Mortgagee and on behalf of the Lender (Florida Capital), filed a Satisfaction of Mortgage, dated November 3, 2006, certifying that the Florida Capital Mortgage was fully paid and satisfied (the "Satisfaction"). The Satisfaction stated that the Florida Capital Mortgage had never been assigned. *Id.* The Satisfaction was filed in CRFN 2006000651755.

**RESPONSE:** MERS states that the land records and referenced documents speak for themselves and are the best evidence of their contents and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 45.

### The Fairmont Mortgage

46.    On or about December 4, 2006, MERS filed a mortgage on the Premises, dated October 18, 2006, granted by Plaintiffs Shaul Chazon and Tvita Cohen to Fairmont Funding, LTD. ("Fairmont"), to secure a loan in the amount of $453,061.97 (the "Fairmont Mortgage"). The Fairmont Mortgage named Plaintiffs Shaul Chazon and Tvita Cohen as Borrowers, Fairmont as Lender, and Defendant MERS as Mortgagee of Record. *Id.* The Fairmont Mortgage states that it secures a Note for $453,061.97, signed by the Borrowers and dated October 18, 2006. *Id.* The Fairmont Mortgage was filed in CRFN 20060000666806. Plaintiffs were not represented by counsel in connection with the Fairmont Mortgage.

AmericasActive:14411117.1

**RESPONSE:** MERS states that the land records and referenced documents speak for themselves and are the best evidence of their contents and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 46 and denies them on that basis.

### The CEMA

47.     On or about December 5, 2006, MERS filed a Consolidated, Extension and Modification Agreement, dated October 18, 2006, that purported to consolidate the Florida Capital Mortgage and the Fairmont Mortgage into a single debt of $900,000.00 (the "CEMA"). The CEMA was filed in CRFN 2006000668382. The CEMA names Tvita Cohen as "Borrower," Fairmont as "Lender," and Defendant MERS as "nominee for Lender." *Id.* The CEMA was signed on behalf of Fairmont by "Steven Bakst, Assistant Vice President" and was signed on behalf of MERS by "Steven Bakst, Assistant Secretary for MERS." *Id.* Plaintiffs were not represented by counsel in connection with the CEMA.

**RESPONSE:** MERS states that the land records and referenced documents speak for themselves and are the best evidence of their contents and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 47, and denies them on that basis.

48.     Attached to the CEMA as "Exhibit C" is a "Consolidated Note," purporting to secure a consolidated debt of $900,000.00 and naming Fairmont as "Lender" (the "CEMA Note"). *Id.* The CEMA Note does not identify a "Borrower" and is unsigned. Attached to the CEMA as "Exhibit D" is a "Consolidated Mortgage" that purports to secure the CEMA and CEMA Note by a mortgage on the Premises (the "CEMA Mortgage"). *Id.* The CEMA Mortgage

names Plaintiffs Shaul Chazon and Tvita Cohen as "Borrower," Fairmont as "Lender," and Defendant MERS as "Mortgagee of Record." *Id.* The CEMA Mortgage is unsigned. *Id.*

**RESPONSE:** MERS denies that the CEMA is unsigned, states that the land records and referenced documents speak for themselves and are the best evidence of their contents, and denies the remaining allegations contained in Paragraph 48.

49. "Exhibit A" of the CEMA, which states what the document purports to consolidate, lists two mortgage debts: (1) the Fairmont Mortgage, and (2) a mortgage allegedly made by Tvita Cohen and Shaul Chazon to Fairmont Funding, Ltd., dated August 29, 2005, securing the original principal amount of U.S. $460,400.00 and recorded in CRFN 2005000539264. *Id.* There is no mortgage to Fairmont Funding, Ltd. other than the Fairmont Mortgage; the document recorded in CRFN 2005000539264 is the Florida Capital Mortgage.

**RESPONSE:** MERS states that the land records and referenced documents speak for themselves and are the best evidence of their contents and denies the remaining allegations contained in Paragraph 49.

50. Furthermore, Exhibit A of the CEMA states that the second mortgage listed (the Florida Capital Mortgage) was transferred to Countrywide Home Loans and was further assigned to Fairmont. There is no evidence that the Florida Capital Mortgage was ever assigned or transferred to anyone prior to the Satisfaction, dated November 3, 2006; nor is there evidence that the Florida Capital Mortgage was assigned or transferred until the invalid assignment to BNY Mellon on November 9, 2011, over five (5) years after the debt had been fully satisfied.

**RESPONSE:** MERS states that the CEMA and other referenced documents speak for themselves and are the best evidence of their contents and denies the remaining allegations contained in Paragraph 50.

51.     Indeed, at the time of the CEMA, the Florida Capital Mortgage was the sole property of Florida Capital, which was neither a party to, nor authorized, the CEMA. Therefore, Fairmont's attempt in the CEMA to consolidate the Fairmont Mortgage that it owned with the Florida Capital Mortgage that it did not own, creating a consolidated debt and mortgage in Fairmont's name, constituted fraud, theft, and conversion. Therefore, the CEMA is invalid and void.

**RESPONSE:** Paragraph 51 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 51.

### The CEMA is Fraudulent

52.     The Satisfaction states that the Florida Capital Mortgage was fully satisfied on November 3, 2006 and was never assigned. The CEMA, the CEMA Note, and the CEMA Mortgage (the "CEMA documents") state that the Florida Capital Mortgage was assigned to Fairmont and consolidated with the Fairmont Mortgage on October 18, 2006. Thus, the Satisfaction and the CEMA documents are mutually exclusive.

**RESPONSE:** Paragraph 52 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS states that the referenced documents and land records speak for themselves and are the best evidence of their contents and denies the remaining allegations contained in Paragraph 52.

53.     The CEMA documents are all fraudulent and void.

**RESPONSE:** Paragraph 53 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 53.

54.     First, the CEMA documents purport to consolidate the Florida Capital Mortgage with the Fairmont Mortgage and to create a consolidated Note and Mortgage in favor of Fairmont Capital. However, the CEMA documents are executed by MERS and Fairmont, which owned the Fairmont Mortgage, but they are not executed or authorized by Florida Capital, which was the sole owner of the Florida Capital Mortgage at the time the CEMA documents were executed. There is no evidence that Florida Capital ever assigned the Florida Capital Mortgage to Fairmont. Therefore, in the CEMA, Fairmont and MERS purported to consolidate to Fairmont the Florida Capital Mortgage, a debt that neither Fairmont nor MERS owned or had authority to transfer or consolidate. Thus, the CEMA and all related documents are fraudulent and ineffective.

**RESPONSE:** Paragraph 54 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies that the CEMA and all related documents are fraudulent and ineffective, states that the referenced documents speak for themselves and are the best evidence of their contents, and denies the remaining allegations contained in Paragraph 54.

55.     Furthermore, the CEMA documents purport to consolidate the Florida Capital Mortgage with the Fairmont Mortgage, but they were filed on December 5, 2006, twelve (12) days after MERS filed the Satisfaction, dated November 3, 2006, certifying that the Florida Capital Mortgage was fully paid and satisfied and that the Florida Capital Mortgage had never been assigned. Although the CEMA documents are all dated October 18, 2006 and the Satisfaction is dated November 3, 2006, the Satisfaction is properly signed, while the CEMA documents are not.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 55 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 55, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

56. Moreover, Defendant MERS executed and filed the Satisfaction in its capacity as the Mortgagee of Record of the Florida Capital Mortgage. The Satisfaction states that the Florida Capital Mortgage was never assigned. This statement refutes the CEMA documents.

**RESPONSE:** Paragraph 56 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 56, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

### The Countrywide Mortgage

57. On or about February 25, 2008, Plaintiff Tvita Cohen granted a mortgage on the Premises to Countrywide Bank, FSB ("Countrywide") to secure a Home Equity Line of Credit ("HELOC") with a maximum indebtedness of $200,000.00 (the "Countrywide Mortgage"). The Countrywide Mortgage was recorded on April 10, 2008, in CRFN 2008000145031. *Id.* The Countrywide Mortgage names Plaintiff Tvita Cohen as Borrower, Countrywide as Lender, and Defendant MERS as Mortgagee of Record solely as nominee for Countrywide. *Id.*

**RESPONSE:** MERS admits the allegations contained in Paragraph 57 and denies the remaining allegations contained in paragraph 57, except to state that the land records and referenced documents speak for themselves and are the best evidence of their contents.

58. Paragraph (g) of the Countrywide Mortgage states that the Countrywide Mortgage "is subject and subordinate to a prior mortgage dated October 01, 1997 and given by [the

Borrower] to Countrywide Home Loans, Inc. as mortgagee, in the original amount of $900,000." *Id.* However, there is no mortgage recorded against the Premises during 1997. Indeed, there is a mortgage on the premises recorded on April 10, 1987 that was granted by the former owner, Eva Goldberger, to Home Federal Savings Bank and one that was granted by Tvita Cohen to Greenpoint Bank and recorded on June 11, 1998. There is no mortgage on the Premises recorded between the times of these two mortgages. Furthermore, Plaintiff Tvita Cohen did not acquire the Premises until April 8, 1998. Therefore, any reference in the Countrywide Mortgage to a prior mortgage is false, as no prior mortgage exists.

**RESPONSE:** MERS states that the land records and referenced documents speak for themselves and are the best evidence of their contents and denies the remaining allegations contained in Paragraph 58.

59.     On April 27, 2009, Countrywide was acquired by Defendant BofA. Consequently, Countrywide no longer exists as an independent institution and cannot be a party to this action. As Countrywide's successor, Defendant BofA is liable for any claims against Countrywide.

**RESPONSE:** Paragraph 59 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 59.

60.     On or about March 13, 2013, Defendant BofA, as assignee of the Countrywide Mortgage, filed a Satisfaction of Mortgage, dated February 22, 2013, certifying that the Countrywide Mortgage was fully paid and satisfied (the "HELOC Satisfaction").

**RESPONSE:** MERS admits that a satisfaction was filed and denies the remaining allegations contained in paragraph 60, except to state that the land records and referenced documents speak for themselves and are the best evidence of their contents.

## The Assignments of Mortgage

### The BNY Mellon Assignment

61.     On or about November 9, 2011, Defendant MERS, acting as nominee for Defendant Florida Capital, executed an Assignment of Mortgage that purported to assign the Florida Capital Mortgage from Florida Capital to Defendant BNY Mellon (the "BNY Mellon Assignment"). The BNY Mellon Assignment was recorded on December 14, 2011, in CRFN 2011000436497; the recording was requested by Defendant BofA. *Id.*

**RESPONSE:** MERS admits that an assignment was recorded, states that the land records and referenced documents speak for themselves and are the best evidence of their contents, and denies the remaining allegations contained in Paragraph 61.

62.     Although the BNY Mellon Assignment appears, at first, to assign only the Florida Capital Mortgage, it lists the Florida Capital Mortgage, the Fairmont Mortgage, and the CEMA. *Id.* However, the BNY Mellon Assignment states that MERS executed that assignment solely as nominee for Florida Capital. *Id.* Florida Capital was the original lender of the Florida Capital Mortgage; consequently, Florida Capital owned the Florida Capital Mortgage. By contrast, Florida Capital never owned either the Fairmont Mortgage or the CEMA; therefore, MERS could not assign either the Fairmont Mortgage or the CEMA to BNY Mellon as nominee for Florida Capital. Consequently, despite its language the BNY Mellon Assignment cannot be read to assign anything other than the Florida Capital Mortgage. In fact, the BNY Mellon Assignment did not give BNY Mellon anything, at all.

**RESPONSE:** Paragraph 62 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in

paragraph 62 except to state that the referenced documents speak for themselves and are the best evidence of their contents.

63.     The BNY Mellon Assignment of the Florida Capital Mortgage was executed by Defendant MERS over five (5) years after Defendant MERS executed the Satisfaction, in which MERS stated that the Florida Capital Mortgage was fully paid and discharged as of November 3, 2006. Further, the Satisfaction was recorded on November 24, 2006, just under five (5) years before the BNY Assignment purported to assign the Florida Capital Mortgage that was already fully paid. Therefore, the BNY Mellon Assignment is void and ineffective, and BNY Mellon owns no mortgage on or rights against the Premises.

**RESPONSE:** Paragraph 63 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 63, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

The BofA Assignment

64.     On or about June 13, 2012, Defendant MERS, acting as nominee for Countrywide, executed an Assignment of Mortgage that purported to assign from Countrywide to Defendant BofA, an alleged mortgage of the Premises, dated February 25, 2008 and filed on April 10, 2008, granted by Plaintiff Tvita Cohen to Countrywide to secure a loan of $900,000.00 (the BofA Assignment"). The BofA Assignment was recorded on June 27, 2012, in CRFN 2012000254367; the recording was requested by Defendant BofA. *Id.*

**RESPONSE:** Paragraph 64 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in

24

paragraph 64, except to state that the land records and referenced documents speak for themselves and are the best evidence of their contents.

65. The BofA Assignment is erroneous, because it states that it assigns a debt with an original loan amount of $900,000.00, but states that the mortgage that it assigns was dated February 25, 2008 and filed on April 10, 2008, in CRFN 2008000145031. The document filed in CRFN 2008000145031 is the Countrywide Mortgage, which is dated February 25, 2008 and filed on April 10, 2008, and secures a HELOC with a maximum indebtedness of $200,000.00. Therefore, the BofA Assignment assigns the Countrywide Mortgage to BofA, and the statement that the original debt was $900,000.00 is an error.

**RESPONSE:** Paragraph 65 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 65 except to state that the land records and referenced documents speak for themselves and are the best evidence of their contents.

66. Indeed, BofA's subsequent actions in February and March 2013 suggest that BofA interpreted the BofA Assignment that way. If that is the effect of the BofA Assignment, then that BofA retains no rights under the assignment, because the Countrywide Mortgage is fully satisfied.

**RESPONSE:** Paragraph 66 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 66.

67. On or about March 13, 2013, Defendant BofA, as assignee of the Countrywide Mortgage, filed a Satisfaction of Mortgage, dated February 22, 2013, certifying that the Countrywide Mortgage was fully paid and satisfied (the "HELOC Satisfaction"). The HELOC

Satisfaction was recorded in CRFN 2013000102314. The Satisfaction stated that the Countrywide Mortgage had been assigned by MERS, as nominee for Countrywide, to BofA on June 13, 2012 and that the assignment was recorded on June 27, 2012, in CRFN 2012000254367. *Id.* These dates and CRFN clearly refer to the BofA Assignment; thus, the Countrywide Mortgage is fully satisfied.

**RESPONSE:** Paragraph 67 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 67 except to state that the land records and referenced documents speak for themselves and are the best evidence of their contents.

## The BofA Loan Modification Agreement

68.     Between October and November 2012, Defendant BofA purported to enter into a Loan Modification Agreement with Plaintiff Tvita Cohen (the "BofA Modification").[1] The BofA Modification purports to "amend and supplement" a mortgage, deed of trust, or deed to secure debt against the Premises, dated October 18, 2006, in the amount of $900,000.00 and the note bearing the same date and secured by that mortgage. *Id.* The BofA Modification was never recorded. As explained below, the BofA Modification sought to modify a fraudulent debt and is a nullity.

**RESPONSE:** Paragraph 68 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 68 except to state that the referenced documents speak for themselves and are the best evidence of their contents.

---

[1] The BofA Modification contains a purported signature of Plaintiff Tvita Cohen, dated "10-17-12," and the signature of Patricia Lickens, A.V.P., Stewart Lender Services, Inc., dated "11-8-12."

69.     As noted, there are two security instruments against the Premises that are dated October 18, 2006: (1) the Fairmont Mortgage, which secured a loan in the amount of $453,061.97, and (2) the CEMA documents, including the unsigned CEMA Note and CEMA Mortgage, that purported to consolidate the Florida Capital Mortgage and the Fairmont Mortgage into a single debt of $900,000.00 in favor of Fairmont as "Lender," despite that Fairmont never owned the Florida Capital Mortgage. Moreover, although the CEMA documents purport to consolidate the Florida Capital Mortgage with the Fairmont Mortgage, they were filed on December 5, 2006, twelve (12) days after MERS filed the Satisfaction, dated November 3, 2006, certifying that the Florida Capital Mortgage was fully paid and satisfied and that the Florida Capital Mortgage had never been assigned.

**RESPONSE:** Paragraph 69 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 69 except to state that the land records and referenced documents speak for themselves and are the best evidence of their contents.

70.     Thus, the BofA Modification sought to "amend and supplement" the CEMA and its underlying mortgage and note. However, the CEMA is fraudulent. In the CEMA, MERS and Fairmont purported to consolidate the Fairmont Mortgage with the Florida Capital Mortgage, although the Florida Capital Mortgage belonged to Florida Capital, and neither MERS nor Fairmont had authority to transfer or consolidate the Florida Capital Mortgage.

**RESPONSE:** Paragraph 70 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations and states that the referenced documents speak for themselves and are the best evidence of their contents.

AmericasActive:14411117.1

71.     Since the CEMA is fraudulent, it is not a valid debt or security instrument that can be modified. Nor is the CEMA the property of BofA, since a fraudulent debt is a nullity and belongs to no lender. Moreover, there is no evidence that the CEMA was ever assigned to either BofA or its predecessor in interest, Countrywide. Therefore, the BofA Modification is void and invalid and grants no right, claim, ownership interest, mortgage, or security interest to BofA. The BofA Modification must be declared invalid.

**RESPONSE:** Paragraph 71 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 71.

## Countrywide's Conversion and Unjust Enrichment

72.     On the day the Fairmont Mortgage was executed, Fairmont purported to consolidate the Fairmont Mortgage (which it owned) with the Florida Capital Mortgage (which it did not own) under the CEMA. This fraud and attempted theft make the CEMA invalid and void.

**RESPONSE:** Paragraph 72 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 72.

73.     Soon after the CEMA was executed in October 2006, Countrywide contacted Plaintiffs and informed them that it had assumed ownership of their debt and opened the Countrywide Home Loan Account in the name of Tvita Cohen and Shaul Chazon. There is no record that either Florida Capital or Fairmont ever transferred any debt owed by Plaintiffs to Countrywide.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 73 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 73.

74. It seems likely that Countrywide believed that Fairmont had transferred the CEMA to Countrywide, but no record of this transfer was ever recorded. In any event, since the CEMA was void from the start, any transfer of the CEMA to Countrywide would not grant Countrywide any rights.

**RESPONSE:** Paragraph 74 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 74.

75. Countrywide charged Tvita Cohen and Shaul Chazon principal and interest against the Countrywide Home Loan Account from late 2006 at least until the BofA Assignment on June 13, 2012. The Countrywide Home Loan Account was fraudulent, because it was based upon no legitimate debt that Plaintiffs owed to Countrywide; therefore, any monies that any of the Plaintiffs paid to Countrywide under that account were wrongfully collected and retained by Countrywide. All monies paid by any and all Plaintiffs to Countrywide in connection with the Countrywide Home Loan Account are the property of Plaintiffs, and, to the extent that Countrywide has collected and continues to retain such monies, Countrywide is guilty of conversion and has been unjustly enriched at Plaintiffs' expense.

**RESPONSE:** Paragraph 75 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 75.

AmericasActive:14411117.1

76.     On April 27, 2009, Countrywide was acquired by Defendant BofA. Consequently, Countrywide no longer exists as an independent institution and cannot be a party to this action. As Countrywide's successor, Defendant BofA is liable for any claims against Countrywide.

**RESPONSE:** Paragraph 76 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76, as they do not relate to MERS.

77.     As noted, the only debt and mortgage against the Premises that Countrywide ever owned was the Countrywide Mortgage, which secured a HELOC with a maximum indebtedness of $200,000.00. The Countrywide Mortgage was fully satisfied no later than February 22, 2013, when Defendant BofA, as assignee of the Countrywide Mortgage, filed the HELOC Satisfaction, acknowledging that the Countrywide Mortgage was fully satisfied.

**RESPONSE:** Paragraph 77 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77, as they do not relate to MERS.

78.     Since the Countrywide Home Loan Account was invalid and void from the start, as it was based upon no legitimate debt, whatsoever, all funds paid to Countrywide in connection with the Countrywide Home Loan Account were improperly paid and are the property of Plaintiffs.

**RESPONSE:** Paragraph 78 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 78.

### BofA's Conversion and Unjust Enrichment

AmericasActive:14411117.1

79.     At least since the BofA Assignment on June 13, 2012, Defendant BofA has maintained a Home Loan Account in the name of Plaintiff Tvita Cohen and has been charging principal and interest against that account (the "BofA Home Loan Account").

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79, as they do not relate to MERS.

80.     BofA issues monthly mortgage statements on the BofA Home Loan Account, which state that the mortgage is on the real property located at 1874 East 27th Street, Brooklyn, NY 11229. *Id.*

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80, as they do not relate to MERS.

81.     As of December 7, 2018, BofA claimed that the gross unpaid principal balance on the BofA Home Loan Account was $583,286.34. *Id.*

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81, as they do not relate to MERS.

82.     The BofA Home Loan Account maintained by Defendant BofA is fraudulent, because it is not based upon any legitimate debt, and any monies that any of the Plaintiffs paid to BofA under that account were wrongfully collected and retained by BofA. All monies paid by any and all Plaintiffs to BofA in connection with the BofA Home Loan Account are the property of Plaintiffs, and to the extent that BofA has collected and continues to retain such monies, BofA is guilty of conversion and has been unjustly enriched at Plaintiffs expense.

**RESPONSE:** Paragraph 82 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks knowledge or information sufficient

to form a belief as to the truth of the allegations contained in Paragraph 82, as they do not relate to MERS.

83.     As noted, the only debt and mortgage against the Premises that Defendant BofA ever owned was the Countrywide Mortgage, which secured a HELOC with a maximum indebtedness of $200,000.00. BofA acquired the Countrywide Mortgage by the BofA Assignment on June 13, 2012. Countrywide Mortgage was fully satisfied no later than February 22, 2013, when Defendant BofA, as assignee of the Countrywide Mortgage, filed the HELOC Satisfaction, acknowledging that the Countrywide Mortgage was fully satisfied.

**RESPONSE:** Paragraph 83 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 83, except to state that the land records speak for themselves and are the best evidence of their contents.

84.     Since the BofA Home Loan Account was fraudulent from the start, as it was based upon no legitimate debt, whatsoever, all funds paid to BofA in connection with the BofA Home Loan Account were improperly paid and are the property of Plaintiffs.

**RESPONSE:** Paragraph 84 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84, as they do not relate to MERS.

85.     At least since the BofA Assignment on June 13, 2012, Defendant BofA has been charging several thousand dollars in monthly principal and interest against that account. Therefore, between June 13, 2012 and the present, Defendant BofA has been collecting several thousand dollars per month from the Plaintiffs in principal and interest on the Home Loan

Account for nearly eighty-four (84) months and has wrongfully collected hundreds of thousands of dollars from Plaintiffs in connection with the BofA Home Loan Account.

**RESPONSE:** Paragraph 85 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85, as they do not relate to MERS.

86. The exact amount that Defendant BofA has wrongfully collected in this way will be determined after discovery and trial of the matter. It is estimated that the amount of these damages exceeds $500,000.00. Plaintiffs are entitled to recover the full amount of these payments, plus prejudgment interest at the statutory rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 86 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86, as they do not relate to MERS.

**Plaintiffs Attempt to Obtain a Mortgage on the Premises**

87. Plaintiffs had a debt of $350,000.00 that was due to be paid in full on October 31, 2018 (the "MDEK Loan"). Under the terms of the MDEK Loan, Plaintiffs were required to pay the $350,000.00 in full on or before October 31, 2018. When Plaintiffs were unable to pay off the MDEK Loan on October 31, 2018, that debt went into default. By the terms of the MDEK Loan, once the debt is in default, Plaintiffs must pay monthly interest at an annual rate of twenty-four percent (24%) until the debt is paid in full.

AmericasActive:14411117.1

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87, as they do not relate to MERS, and therefore denies them on that basis.

88. In order to avoid defaulting on the MDEK Loan, during 2018, Plaintiffs attempted to refinance the mortgage against the Premises to pay off the MDEK Loan on time. On December 4, 2018, Sharon Lauren Chazon, the daughter of Plaintiff Shaul Chazon and a shareholder of Plaintiff S & Sharon Inc., and her husband Liran Avtaby, were approved for a loan of $795,000.00 at an interest rate of 5.75 percent per annum (5.796 APR), secured by a mortgage on the Premises, subject to Plaintiffs proving that they had clear title to the Premises. The loan was approved by prospective lender United Mortgage Corp. of West Palm Beach, Florida, and a large portion of the money borrowed was intended to pay off the MDEK Loan. The Commitment Expiration Date of the loan was January 3, 2019. *Id.* This means that, in order to obtain the interest rate offered, the loan was required to close no later than January 3, 2019.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88, as they do not relate to MERS, and therefore denies them on that basis.

89. Because of the several fraudulent mortgages and assignments of mortgage filed and claimed by the Defendants, including the CEMA, the BNY Mellon Assignment, and the BofA Assignment, the title company retained in connection with Plaintiffs' attempt to obtain the new loan was unable to clear Plaintiffs' title to the Premises, and Plaintiffs were unable to mortgage the Premises to secure the loan that they needed to pay off the MDEK Loan.

**RESPONSE:** Paragraph 89 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations relating to the legal

status of the referenced mortgages and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 89 and denies them on that basis.

90.     As a result, Plaintiffs could not obtain a loan and have been unable to pay off the MDEK Loan, and that debt went into default on December 1, 2018. Because the MDEK Loan is now in default, Plaintiffs are being charged default interest on the MDEK Loan at a rate of twenty-four percent (24%) per year. This comes to monthly interest of $7,000.00. In addition, Plaintiffs were damaged by the loss of the favorable interest rate of 5.75 percent per annum (5.796 APR) that they would have received from United Mortgage Corp. Interest rates have risen, and Plaintiff cannot expect to obtain a comparable interest rate. The total accumulated damages that have resulted from Plaintiffs inability to show its clear title are believed to be in excess of $75,000.00 and those damages are increasing monthly.

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90, as they do not relate to MERS, and therefore denies them on that basis.

91.     As a result of the foregoing, Plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

**RESPONSE:** Paragraph 91 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 91.

## **FIRST CAUSE OF ACTION**

### **Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.* (All Defendants)**

AmericasActive:14411117.1

92.    Plaintiffs, adopt and incorporate by reference herein the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 91 of this Answer as if fully set forth herein.

93.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

**RESPONSE:** Paragraph 93 contains legal arguments and legal conclusions that do not require a response.   To the extent a response is required, MERS admits the allegations contained in Paragraph 93, upon information and belief.

94.    At all times pertinent hereto, Defendant Ridgewood was a "financial institution" as defined by 15 U.S.C. § 1681a(t).

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94, as they do not relate to MERS, and therefore denies them on that basis.

95.    At all times pertinent hereto, Defendants BANK OF AMERICA, N.A., BANK OF AMERICA, N.A., AS SUCCESSOR TO COUNTRYWIDE BANK, FSB, THE BANK OF NEW YORK MELLON CORPORATION and FLORIDA CAPITAL BANK D/B/A FLORIDA CAPITAL BANK MORTGAGE are considered a "financial institution" as defined by 15 U.S.C. § 1681a(t).

**RESPONSE:** Paragraph 95 contains legal arguments and legal conclusions that do not require a response.   To the extent a response is required, MERS denies the allegations in Paragraph 95, except to state that the referenced statute speaks for itself and is the best evidence of its contents.

96.    At all times pertinent hereto, the aforementioned Defendants supplied credit information about consumers to credit reporting agencies.

**RESPONSE:** Paragraph 96 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 96, only as such allegations relate to MERS, upon information and belief.

97. Under the FCRA, furnishers of credit information have a duty to investigate disputes from consumers about the accuracy of information that is reported.

**RESPONSE:** Paragraph 97 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 97, except to state that the statute speaks for itself and is the best evidence of its contents.

98. The Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681 et seq., was enacted in 1970 to ensure, among other things, that "consumer reporting agencies" adhere to strict guidelines for maintaining and distributing fair and accurate consumer reports.

**RESPONSE:** Paragraph 98 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 98, except to state that the statute speaks for itself and is the best evidence of its contents.

99. The FCRA creates a set of individual consumer rights and a private right of action by which to vindicate those rights.

**RESPONSE:** Paragraph 99 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 99, except to state that the statute speaks for itself and is the best evidence of its contents.

100.     A "consumer reporting agency," as defined by FCRA, is one that accepts "monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and... uses...means or facilities] of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

**RESPONSE:** Paragraph 100 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 100, except to state that the statute speaks for itself and is the best evidence of its contents.

101.     A "nationwide specialty consumer reporting agency," as defined by FCRA, is "a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis relating to (1) medical records or payments: (2) residential or tenant history; (3) check writing history; (4) employment history; or (5) insurance claims." 15 U.S.C. § 1681a(w).

**RESPONSE:** Paragraph 101 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 101, except to state that the statute speaks for itself and is the best evidence of its contents.

102.     A "consumer report," as defined by FCRA, contains "written, oral, or other communication[s] of... information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit

or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C, § 1681a(d).

**RESPONSE:** Paragraph 102 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 102, except to state that the statute speaks for itself and is the best evidence of its contents.

103. A person or entity will have provided a "consumer report," within the meaning of the FCRA, by providing information related to consumer's occupation, arrest history, conviction history, date of arrest, area of arrest, and disability, by which such information bears on a consumer's character, general reputation, personal characteristics, and mode of living as it comports with the characteristics enumerated in 15 U.S.C. § 1681a(d).

**RESPONSE:** Paragraph 103 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 103, except to state that the statute speaks for itself and is the best evidence of its contents.

104. Section 1681e(d)(l) of FCRA requires that a consumer reporting agency provide, to any person who regularly and in the ordinary course of business furnishes information about any consumer to the consumer reporting agency ("Furnisher"), a "Notice To Furnishers of Information: Obligations Under the FCRA" ("Furnisher Notice").

**RESPONSE:** Paragraph 104 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in

paragraph 104, except to state that the statute speaks for itself and is the best evidence of its contents.

105.    Section 1681e(d)(2) requires that a consumer reporting agency provide, to any person to whom it provides a consumer report ("Users"), a "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA" ("User Notice").

**RESPONSE:** Paragraph 105 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 105, except to state that the statute speaks for itself and is the best evidence of its contents.

106.    The Furnisher Notices and the User Notices inform Furnishers and Users, of their responsibilities under FCRA, such as a Furnisher's responsibility to provide accurate information or a User's responsibility to provide adverse action notices.

**RESPONSE:** Paragraph 106 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 106, except to state that the statute speaks for itself and is the best evidence of its contents.

107.    Failure to provide Furnisher Notices to Furnishers is a violation of the FCRA.

**RESPONSE:** Paragraph 107 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 107, except to state that the statute speaks for itself and is the best evidence of its contents.

108.    Failure to provide User Notices to Users is a violation of the FCRA.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 108 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 108, except to state that the statute speaks for itself and is the best evidence of its contents.

109. Section 1681e(b) of the FCRA mandates that when a consumer reporting agency prepares a consumer report that it shall follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.

**RESPONSE:** Paragraph 109 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 109, except to state that the statute speaks for itself and is the best evidence of its contents.

110. Any person or entity that furnishes consumer reports and fails to follow reasonable procedures to assure the maximum possible accuracy of the information that it provides in such consumer reports acts in violation of the FCRA.

**RESPONSE:** Paragraph 110 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 110, except to state that the statute speaks for itself and is the best evidence of its contents.

111. Any person or entity that violates Sections 1681e(d) and or 1681e(b) of the FCRA shall be liable to the subject of such reported information for (1) "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," or (2) "in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the

consumer as a result of the failure or $1,000, whichever is greater" and punitive damages as the court may allow, and, "in the case of any successful action to enforce any liability, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n.

**RESPONSE:** Paragraph 111 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 111, except to state that the statute speaks for itself and is the best evidence of its contents.

112.    15 U.S.C. § 1681j(a)(l)(C) directs the Federal Trade Commission ("FTC") to establish streamlined processes for consumers to request free annual file disclosures. The FTC promulgated the Streamlined Process Rule, which is codified at 16 C.F.R. § 610.3. The rule requires, among other things, that a nationwide specialty consumer reporting agency provide consumers with a toll-free telephone number to request annual file disclosures and that the telephone number is prominently posted on any website owned or maintained by the nationwide specialty consumer reporting agency, as well as instructions to request disclosures by any additional available request methods. 16 C.F.R. § 610.3(a)(1).

**RESPONSE:** Paragraph 112 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 112, except to state that the statute speaks for itself and is the best evidence of its contents.

113.    Plaintiffs disputed the accuracy of the information that Defendants reported to the credit reporting agencies in Plaintiffs credit file.

AmericasActive:14411117.1

**RESPONSE:** MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113, as they do not relate to MERS, and therefore denies them on that basis.

114.     Upon information and belief, Defendants individually and/or jointly, compile and maintain files on consumers relating to residential or tenant history, lending history, and employment history pursuant to 15 U.S.C. § 1681a(w).

**RESPONSE:** Paragraph 114 contains legal arguments and legal conclusions that do not require a response.   To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113, as they do not relate to MERS, and therefore denies them on that basis.

115.     Further, the data the Defendants distribute, furnishes upon request(s) and/or sells to third-parties constitutes a "consumer report" as defined by FCRA because it contains written information by a consumer reporting agency bearing on a consumer's character, general reputation, personal characteristics, and/or mode of living pursuant to 15 U.S.C. § 1681a(d).

**RESPONSE:** Paragraph 115 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 115, except to state that the statute speaks for itself and is the best evidence of its contents.

116.     The aforementioned data collected and distributed by defendants is used and can be expected to be used for the purpose of serving as a factor in establishing the consumer's eligibility for credit pursuant to 15 U.S.C, § 1681a(d).

**RESPONSE:** Paragraph 116 contains legal arguments and legal conclusions that do not require a response.   To the extent a response is required, MERS denies the allegations contained in

paragraph 116, except to state that the statute speaks for itself and is the best evidence of its contents.

117.    Upon information and belief, Defendants disseminate information bearing on the characteristics enumerated in 15 U.S.C. § 1681a(d). Specifically, by providing information related to consumers, Defendants are disseminating information bearing on a consumer's credit worthiness, mode of living, consumer's character, general reputation, and information likely to be used in, among other things, employment decisions and credit decisions.

**RESPONSE:** Paragraph 117 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 117, except to state that the statute speaks for itself and is the best evidence of its contents.

118.    Additionally, upon information and belief, Defendants have continually failed to provide Furnisher Notices to Furnishers and User Notices to Users as required by FCRA Section 1681e(d).

**RESPONSE:** Paragraph 118 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 118, except to state that the statute speaks for itself and is the best evidence of its contents.

119.    Upon information and belief, Defendants fail to follow reasonable procedures to assure the maximum possible accuracy of the information that it provides in its consumer reports pursuant to 15 U.S.C. § 1681e(b).

**RESPONSE:** Paragraph 119 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in

paragraph 119, except to state that the statute speaks for itself and is the best evidence of its contents.

120. As a result of Defendants' conduct described herein and its willful violations of §§ 1681e(d), 1681 e(b), Plaintiff has suffered harm as described herein. Plaintiff seeks an order enjoining Defendant's conduct described herein and awarding the maximum statutory damages available under 15 U.S.C. § 1681n.

**RESPONSE:** Paragraph 120 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 120, except to state that the statute speaks for itself and is the best evidence of its contents.

121. Defendants were aware or should have been aware of the allegations contained above and such resulted in actual loss of a favorable loan/mortgage.

**RESPONSE:** Paragraph 121 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 121.

122. Defendants, once made aware of the inaccurate information concerning Plaintiffs, *inter alia,* creditworthiness became obligated to correct the inaccurate information on Plaintiffs' credit file.

**RESPONSE:** Paragraph 122 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 122.

123. Defendants failed to correct the inaccurate information that it reported in Plaintiffs credit file and continued to report the inaccurate information concerning Plaintiffs.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 123 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 123.

124. Defendants willfully and/or negligently failed to comply with the requirements of the FCRA and are liable to pay damages and costs of litigation to Plaintiffs under 15 U.S.C. § 1681n and/or § 1681o.

**RESPONSE:** Paragraph 124 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 124.

125. As a direct result of Defendants' negligent, reckless, and/or knowing misreporting in Plaintiffs credit file, Plaintiffs credit was damaged. As a direct result of Defendants' actions and omissions, Plaintiffs were denied a mortgage at a favorable interest rate as described more fully above.

**RESPONSE:** Paragraph 125 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 125.

126. 15 U.S.C. §1692(f) provides in relevant part:

False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of —

(A) the character, amount, or legal status of any debt; or

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

46

**RESPONSE:** Paragraph 126 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 126, except to state that the statute speaks for itself and is the best evidence of its contents.

127. Defendants violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

**RESPONSE:** Paragraph 127 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 127, except to state that the statute speaks for itself and is the best evidence of its contents.

128. Defendants violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

**RESPONSE:** Paragraph 128 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 129.

129. As a result, Foreclosure proceedings against Plaintiffs remain pending, and the Plaintiffs continue to accrue additional legal fees and costs.

**RESPONSE:** Paragraph 129 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 129, as they do not relate to MERS, and therefore denies them on that basis.

130.    In addition, Defendants' conduct has caused the Plaintiffs to suffer great emotional distress driven by the fear that Plaintiffs might lose their home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

**RESPONSE:** Paragraph 130 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 130.

131.    Plaintiffs were forced to hire counsel to defend a foreclosure action and prosecute this action in connection with Defendants' conduct.

**RESPONSE:** Paragraph 131 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 131, as they do not relate to MERS, and therefore denies them on that basis.

132.    Plaintiffs is entitled to recover as actual damages sums paid to counsel.

**RESPONSE:** Paragraph 132 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 132.

133.    As a result of the foregoing, Plaintiffs are damaged, and continues to be damaged, in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

**RESPONSE:** Paragraph 133 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 133.

## SECOND CAUSE OF ACTION

AmericasActive:14411117.1

**Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* (All Defendants)**

134. Plaintiffs, adopt and incorporate by reference herein the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 133 of this Answer as if fully set forth herein.

135. Plaintiffs are a "consumer" as defined by 15 U.S.C. § 1602(i).

**RESPONSE:** Paragraph 135 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 135, except to state that the statute speaks for itself and is the best evidence of its contents.

136. Plaintiff was not provided disclosures that conform with the obligations under the TILA and Regulation Z.

**RESPONSE:** Paragraph 136 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 136, as they do not relate to MERS, and therefore denies them on that basis.

137. The purpose of the Truth in Lending Act, ("TILA"), is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

**RESPONSE:** Paragraph 137 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 137, except to state that the statute speaks for itself and is the best evidence of its contents.

AmericasActive:14411117.1

138.     The purpose of the Truth in Lending Act, ("TILA"), is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. As a result, "creditors [are required] to provide borrowers with clear and accurate disclosures of terms dealing..." *Beach* v. *Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S. Ct. 1408, 1410 (1998); *see also Islam* v. *Lee's Motors, Inc.,* No. 17-cv-3955, 2018 WL 4771884, at *3 (E.D.N.Y. Sept. 30, 2018) (quoting *Bonanno* v. *Sec. Atl. Mortg. Co.,* No. 07-cv-4071, 2010 WL 2134155, at *5 (E.D.N.Y. May 26, 2010)).

**RESPONSE:** Paragraph 138 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 138, except to state that the statute speaks for itself and is the best evidence of its contents.

139.     Specifically, the finance charge, APR and total of payments disclosed in the retail installment contract are all materially misstated, in violation of TILA § 1638(a)(3) through (5) and Regulation Z, e.g. § 226.18(b).

**RESPONSE:** Paragraph 139 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in paragraph 139, except to state that the statute speaks for itself and is the best evidence of its contents.

140.     At all times pertinent hereto, Defendant BNY MELLON was a "loan servicer" as defined by 15 U.S.C. § 1639a(f)(2).

**RESPONSE:** Paragraph 140 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS states that the referenced statute speaks

for itself and is the best evidence of its contents. MERS further responds that MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140, as they do not relate to MERS, and therefore denies them on that basis.

141. The Subject Premises are Plaintiffs' principal dwelling; therefore, the Mortgage is "a consumer credit transaction secured by a consumer's principal dwelling" for purposes of 15 U.S.C. § 1639f.

**RESPONSE:** Paragraph 141 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 141, except to state that the statute speaks for itself and is the best evidence of its contents.

142. "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, except as required in subsection (b)." 15 U.S.C. § 1639f.

**RESPONSE:** Paragraph 142 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 142, except to state that the statute speaks for itself and is the best evidence of its contents.

143. Under the TILA, a servicer of a residential consumer credit transaction secured by a consumer's principal dwelling must not fail to promptly credit every payment toward the loan to the consumer's loan account as of the date of receipt. 15 U.S.C. § 1639f.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 143 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 143, except to state that the statute speaks for itself and is the best evidence of its contents.

144. As noted above, there are two security instruments against the Premises that are dated October 18, 2006: (1) the Fairmont Mortgage, which secured a loan in the amount of $453,061.97, and (2) the CEMA documents, including the unsigned CEMA Note and CEMA Mortgage, that purported to consolidate the Florida Capital Mortgage and the Fairmont Mortgage into a single debt of $900,000.00 in favor of Fairmont as "Lender," despite that Fairmont never owned the Florida Capital Mortgage.

**RESPONSE:** MERS admits that the two security agreements referenced in paragraph 144 are dated October 18, 2006. MERS denies the balance of the allegations in paragraph 144.

145. Pursuant to TILA, the Defendants are liable for actual damage sustained by Plaintiff as a result of its failure to comply with the Truth in Lending Act, including, but not limited to: (a) the amount of the unauthorized charges on Plaintiffs account, (b) the amount of all finance charges/related fees associated with the unauthorized charges by Defendants, (c) the amount of all late fees associated with the unauthorized charges, and (d) damage to Plaintiffs credit, to the extent Defendants, individually, jointly or independently have reported the unpaid amounts for the unauthorized charges, finance charges and late fees to any credit reporting agencies.

**RESPONSE:** Paragraph 145 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in

paragraph 145, except to state that the statute speaks for itself and is the best evidence of its contents.

146.    The TILA violations set forth herein were willful, intentional, frequent and persistent.

**RESPONSE:** Paragraph 146 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 146.

147.    As a result of the foregoing, Plaintiff was damaged in a sum to be determined at trial but believed to exceed $75,000.00. Thus, Plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

**RESPONSE:** Paragraph 147 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 147.

## THIRD CAUSE OF ACTION

### Slander of title (All Defendants)

148.    Plaintiffs, adopt and incorporate by reference herein the allegations contained in above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 147 of this Answer as if fully set forth herein.

149.    The several fraudulent mortgages and assignments of mortgage filed and claimed by the Defendants, including the CEMA and the BNY Mellon Assignment, have clouded the title that Plaintiff S & Sharon Inc. holds in the Premises.

**RESPONSE:** Paragraph 149 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 149.

150. Plaintiffs title has been clouded as a direct result of the Defendants' actions in assigning, acquiring, and filing the aforesaid fraudulent mortgages and assignments of mortgage.

**RESPONSE:** Paragraph 150 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 150.

151. Further, as a result of Defendants' conduct in clouding Plaintiffs title to the Premises, Plaintiffs have lost the loan for which it had been approved and have been unable to obtain a loan against the Premises. As a result of its inability to obtain a loan, Plaintiffs Shaul Chazon have been damaged by having to pay default interest upon the MDEK Loan at a rate of twenty-four percent (24%) per year, or $7,000.00 per month. Thus far, Plaintiffs have been damaged in the amount of $21,000.00 in interest payments, and that amount will increase by $7,000.00 per month until Plaintiffs title is cleared and Plaintiffs are able to obtain a loan at a reasonable interest rate to pay off the MDEK Loan.

**RESPONSE:** Paragraph 151 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegation that MERS has clouded Plaintiffs' title. With respect to the balance of the allegations in paragraph 151, MERS lacks knowledge or information sufficient to form a belief as to the truth of those allegations, as they do not relate to MERS, and therefore denies them on that basis.

152. In addition, as a direct result of the clouded title to the Premises, Plaintiffs lost the opportunity to borrow $795,000.00 from United Mortgage Corp., and Plaintiffs expect that they

will not find such a favorable rate anytime soon. (A portion of that loan was to be used to pay off the MDEK Loan.) Therefore, Plaintiffs' damages include the increased interest rate that Plaintiffs will eventually be forced to pay when they refinance the Premises.

**RESPONSE:** Paragraph 152 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegation that MERS has clouded Plaintiffs' title. With respect to the balance of the allegations in paragraph 152, MERS lacks knowledge or information sufficient to form a belief as to the truth of those allegations, as they do not relate to MERS, and therefore denies them on that basis.

153. As a result of the foregoing, Plaintiffs were damaged, and continue to be damaged, in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

**RESPONSE:** Paragraph 153 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in paragraph 153.

## FOURTH CAUSE OF ACTION

### Conversion (BofA [for itself and as successor in interest to Countrywide] and BNY Mellon)

154. Plaintiffs, adopt and incorporate by reference herein the allegations contained in the above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 153 of this Answer as if fully set forth herein.

155. As noted in paragraphs 26-30 and 72-78, above, Countrywide has wrongfully converted a substantial amount of Plaintiffs' money under the guise of collecting against the Countrywide Home Loan Account. The Countrywide Home Loan Account is fraudulent, as it is

based upon no legitimate debt, and all money paid to Countrywide pursuant to the Countrywide Home Loan Account is the property of Plaintiffs, yet Countrywide and its successor, Defendant BofA, have converted this money to their own use. Consequently, Plaintiffs are entitled to obtain from Defendant BofA the full amount that Countrywide and BofA converted, plus interest thereon, from the date of payment, at the statutory interest rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017). The full amount that Countrywide converted will be determined after discovery and trial but is believed to exceed $500,000.00.

**RESPONSE:** Paragraph 155 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 155, as they do not relate to MERS.

156. On April 27, 2009, Countrywide was acquired by Defendant BofA. Consequently, Countrywide no longer exists as an independent institution and cannot be a party to this action. As Countrywide's successor, Defendant BofA is liable for any claims against Countrywide.

**RESPONSE:** Paragraph 156 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 156, as they do not relate to MERS.

157. As noted in paragraphs 26-27, 31-33, and 79-82, above, Defendant BofA has wrongfully converted hundreds of thousands of dollars of Plaintiffs' money under the guise of collecting against the BofA Home Loan Account. The BofA Home Loan Account is fraudulent, as it is based upon no legitimate debt, and all money paid to Defendant BofA pursuant to the BofA Home Loan Account is the property of Plaintiffs, yet Defendant BofA has converted this

money to its own use. Consequently, Plaintiffs are entitled to obtain from Defendant BofA the total amount that BofA converted, plus interest thereon, from the date of payment, at the statutory interest rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017). The full amount that Defendant BofA converted will be determined after discovery and trial of the matter but is believed to be in excess of $500,000.00.

**RESPONSE:** Paragraph 157 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 157, as they do not relate to MERS.

158. Furthermore, paragraph (g) of the Countrywide Mortgage states that the Countrywide Mortgage "is subject and subordinate to a prior mortgage dated October 01, 1997 and given by [the Borrower] to Countrywide Home Loans, Inc. as mortgagee, in the original amount of $900,000." However, this alleged mortgage to Countrywide Home Loans, Inc. in the amount of $900,000 is fraudulent, as there is no mortgage recorded against the Premises during 1997.

**RESPONSE:** Paragraph 158 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 158, as they do not relate to MERS and denies them on that basis, except to state that the referenced mortgage speaks for itself and is the best evidence of its contents.

159. Therefore, any and all monies that were paid to Countrywide Home Loans, Inc. or to any of its agents or successors in interest in connection with the alleged October 1, 1997 mortgage were wrongly paid and remain the property of the Plaintiffs. Any such payments were

unlawfully converted by Countrywide Home Loans, Inc. and/or its successor in interest, Defendant BofA. Defendant BofA must return to Plaintiffs all monies so collected, together with statutory interest at the rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 159 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 159, as they do not relate to MERS.

160. In addition, the BNY Mellon Assignment was fraudulent, because it was executed by Defendant MERS over five (5) years after Defendant MERS executed the Satisfaction, in which MERS stated that the Florida Capital Mortgage was fully satisfied on November 3, 2006. Therefore, any monies that Defendant BNY Mellon has collected as a result of the BNY Mellon assignment are the property of Plaintiffs, and BNY Mellon must return any and all such monies to Plaintiffs, together with statutory interest at the rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 160 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 160.

161. As a result of the foregoing, Plaintiffs were damaged in a sum to be determined at trial but believed to exceed $1,000,000.00. Thus, Plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 161 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 161.

## FIFTH CAUSE OF ACTION

### Money Had and Received (BofA [for itself and as successor in interest to Countrywide] and BNY Mellon)

162. Plaintiffs, adopt and incorporate by reference herein the allegations contained in the above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 161 of this Answer as if fully set forth herein.

163. As noted in paragraphs 26-30 and 72-78, above, Countrywide has wrongfully received a substantial amount of Plaintiffs' money under the guise of collecting against the Countrywide Home Loan Account. The Countrywide Home Loan Account is fraudulent, as it is based upon no legitimate debt, and all money paid to Countrywide pursuant to the Countrywide Home Loan Account is the property of Plaintiffs, yet Countrywide and its successor, Defendant BofA, continue to retain this money. Consequently, Plaintiffs are entitled to obtain from Defendant BofA the full amount that Countrywide and BofA wrongfully received, plus interest thereon, from the date of payment, at the statutory interest rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017). The full amount that Countrywide wrongfully received will be determined after discovery and trial but is believed to exceed $500,000.00.

**RESPONSE:** Paragraph 163 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 163, as they do not relate to MERS.

AmericasActive:14411117.1

164. On April 27, 2009, Countrywide was acquired by Defendant BofA. Consequently, Countrywide no longer exists as an independent institution and cannot be a party to this action. As Countrywide's successor, Defendant BofA is liable for any claims against Countrywide.

**RESPONSE:** Paragraph 164 consists of a legal conclusion that requires no response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 164, as they do not relate to MERS.

165. As noted in paragraphs 26-27, 31-33, and 79-85, above, Defendant BofA has wrongfully received hundreds of thousands of dollars of Plaintiffs' money under the guise of collecting against the BofA Home Loan Account. The BofA Home Loan Account is fraudulent, as it is based upon no legitimate debt, and all money paid to Defendant BofA pursuant to the BofA Home Loan Account is the property of Plaintiffs, yet Defendant BofA continues to retain this money. Consequently, Plaintiffs are entitled to obtain from Defendant BofA the total amount that BofA wrongfully received, plus interest thereon, from the date of payment, at the statutory interest rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017). The full amount that Defendant BofA wrongfully received will be determined after discovery and trial of the matter but is believed to be in excess of $500,000.00.

**RESPONSE:** Paragraph 165 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 165, as they do not relate to MERS.

166. Furthermore, paragraph (g) of the Countrywide Mortgage states that the Countrywide Mortgage "is subject and subordinate to a prior mortgage dated October 01, 1997 and given by [the Borrower] to Countrywide Home Loans, Inc. as mortgagee, in the original

amount of $900,000." However, this alleged mortgage to Countrywide Home Loans, Inc. in the amount of $900,000 is fraudulent, as there is no mortgage recorded against the Premises during 1997.

**RESPONSE:** Paragraph 166 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 166, as they do not relate to MERS and denies them on that basis, except to state that the referenced mortgage speaks for itself and is the best evidence of its contents.

167. Therefore, any and all monies that were paid to Countrywide Home Loans, Inc. or to any of its agents or successors in interest in connection with the alleged October 1, 1997 mortgage were wrongly paid and remain the property of the Plaintiffs. Any such payments are wrongfully received and are being unlawfully retained by Countrywide Home Loans, Inc. and/or its successor in interest, Defendant BofA. Defendant BofA must return to Plaintiffs all monies so collected, together with statutory interest at the rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 167 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 167, as they do not relate to MERS.

168. In addition, the BNY Mellon Assignment was fraudulent, because it was executed by Defendant MERS over five (5) years after Defendant MERS executed the Satisfaction, in which MERS stated that the Florida Capital Mortgage was fully satisfied on November 3, 2006. Therefore, any monies that Defendant BNY Mellon has collected as a result of the BNY Mellon

assignment are the property of Plaintiffs, and BNY Mellon must return any and all such monies to Plaintiffs, together with statutory interest at the rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 168 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 168.

169.    As a result of the foregoing, Plaintiffs were damaged in a sum to be determined at trial but believed to exceed $1,000,000.00. Thus, Plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

**RESPONSE:** Paragraph 169 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 169.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment (BofA [for itself and as successor in interest to Countrywide] and BNY Mellon)

170.    Plaintiffs adopt and incorporate by reference herein the allegations contained in the above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 169 of this Answer as if fully set forth herein.

171.    As noted in paragraphs 26-30 and 70-81, above, Countrywide has wrongfully received a substantial amount of Plaintiffs' money under the guise of collecting against the Countrywide Home Loan Account. The Countrywide Home Loan Account is fraudulent, as it is based upon no legitimate debt, and all money paid to Countrywide pursuant to the Countrywide

Home Loan Account is the property of Plaintiffs, yet Countrywide and its successor, Defendant BofA, have retained this money.

**RESPONSE:** Paragraph 171 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 171, as they do not relate to MERS.

172. Consequently, Countrywide and its successor, Defendant BofA, have been unjustly enriched at Plaintiffs' expense by the total amount of money that Countrywide has received based upon the Countrywide Home Loan Account. Plaintiffs are entitled to obtain from Defendant BofA the total amount that Countrywide received, plus interest thereon, from the date of payment, at the statutory interest rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017). The full amount by which Countrywide has been unjustly enriched will be determined after discovery and trial but is believed to exceed $500,000.00.

**RESPONSE:** Paragraph 172 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 172, as they do not relate to MERS.

173. On April 27, 2009, Countrywide was acquired by Defendant BofA. Consequently, Countrywide no longer exists as an independent institution and cannot be a party to this action. As Countrywide's successor, Defendant BofA is liable for any claims against Countrywide.

**RESPONSE:** Paragraph 173 consists of a legal conclusion that requires no response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 173, as they do not relate to MERS.

63

174.    As noted above, Defendant BofA has wrongfully received hundreds of thousands of dollars of Plaintiffs' money under the guise of collecting against the BofA Home Loan Account. The BofA Home Loan Account is fraudulent, as it is based upon no legitimate debt, and all money paid to Defendant BofA pursuant to the BofA Home Loan Account is the property of Plaintiffs, yet Defendant BofA retains this money.

**RESPONSE:** Paragraph 174 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 174, as they do not relate to MERS.

175.    Consequently, Defendant BofA has been unjustly enriched at Plaintiffs' expense by the total amount of money that BofA has received based upon the BofA Home Loan Account. Plaintiffs are entitled to obtain from Defendant BofA the total amount that BofA received, plus interest thereon, from the date of payment, at the statutory interest rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017). The full amount by which Defendant BofA has been unjustly enriched will be determined after discovery and trial of the matter but is believed to be in excess of $500,000.00.

**RESPONSE:** Paragraph 175 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 175, as they do not relate to MERS.

176.    Furthermore, paragraph (g) of the Countrywide Mortgage states that the Countrywide Mortgage "is subject and subordinate to a prior mortgage dated October 01, 1997 and given by [the Borrower] to Countrywide Home Loans, Inc. as mortgagee, in the original

amount of $900,000." However, this alleged mortgage to Countrywide Home Loans, Inc. in the amount of $900,000 is fraudulent, as there is no mortgage recorded against the Premises during 1997.

**RESPONSE:** Paragraph 176 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 176, as they do not relate to MERS, and denies them on that basis, except to state that the referenced mortgage speaks for itself and is the best evidence of its contents.

177. Therefore, any and all monies that were paid to Countrywide Home Loans, Inc. or to any of its agents or successors in interest in connection with the alleged October 1, 1997 mortgage were wrongly paid and remain the property of the Plaintiffs. Any such payments are wrongfully received and are being unlawfully retained by Countrywide Home Loans, Inc. and/or its successor in interest, Defendant BofA. Defendant BofA must return to Plaintiffs all monies so collected, together with statutory interest at the rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 177 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 177, as they do not relate to MERS.

178. In addition, the BNY Mellon Assignment was fraudulent, because it was executed by Defendant MERS over five (5) years after Defendant MERS executed the Satisfaction, in which MERS stated that the Florida Capital Mortgage was fully satisfied on November 3, 2006. Therefore, any monies that Defendant BNY Mellon has collected as a result of the BNY Mellon

assignment are the property of Plaintiffs, and BNY Mellon must return any and all such monies to Plaintiffs, together with statutory interest at the rate of nine percent (9%) per annum. C.P.L.R. §§ 5001 and 5004 (McKinney 2017).

**RESPONSE:** Paragraph 178 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 178.

179. As a result of the foregoing, Plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all other or lower courts which would otherwise have jurisdiction, but at least in excess of $75,000.00.

**RESPONSE:** Paragraph 179 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 179.

## SEVENTH CAUSE OF ACTION

### Fraud (MERS, Florida Capital, BNY Mellon, and BofA [for itself and as successor in interest to Countrywide])

180. Plaintiffs, adopt and incorporate by reference herein the allegations contained in the above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 179 of this Answer as if fully set forth herein.

181. On or about November 9, 2011, Defendant MERS, acting as nominee for Defendant Florida Capital, fraudulently executed the BNY Mellon Assignment, purporting to assign the Florida Capital Mortgage from Florida Capital to Defendant BNY Mellon.

**RESPONSE:** Paragraph 181 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 181.

182. Thus, Defendants MERS, Florida Capital, and BNY Mellon are all parties to the fraudulent BNY Assignment. Further, because the assignment was recorded at the behest of BofA, BofA is also a party to the fraud.

**RESPONSE:** Paragraph 182 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 182.

183. The BNY Mellon Assignment was fraudulent, because it was executed by Defendant MERS over five (5) years after Defendant MERS executed the Satisfaction, in which MERS stated that the Florida Capital Mortgage was fully satisfied on November 3, 2006. Since the Satisfaction was recorded on November 24, 2006, Defendants MERS, Florida Capital, and BNY Mellon were all on notice that the BNY Mellon Assignment was fraudulent.

**RESPONSE:** Paragraph 183 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 183.

184. On or about October 18, 2006, Fairmont and MERS executed the CEMA, which purported to consolidate the Fairmont Mortgage (which Fairmont owned) and the Florida Capital Mortgage (in which Fairmont had no rights) into a consolidated debt—the CEMA—in the name of Fairmont as lender and MERS as Mortgagee of Record as nominee for Fairmont. On or about December 5, 2006, MERS filed a the CEMA. *Id.*

**RESPONSE:** Paragraph 184 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 184, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

185.     The CEMA was and is fraudulent, because, at the time it was drafted, executed, and filed, the Florida Capital Mortgage was the sole property of Florida Capital, which was neither a party to, nor authorized, the CEMA. Therefore, Fairmont's attempt in the CEMA to consolidate the Fairmont Mortgage that it owned with the Florida Capital Mortgage that it did not own, creating a consolidated debt and mortgage in Fairmont's name, constituted fraud, theft, and conversion. Therefore, the CEMA is invalid and void.

**RESPONSE:** Paragraph 185 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 185, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

186.     As a direct result of the fraud, Countrywide, Defendant BofA, and Defendant BNY Mellon have received hundreds of thousands of dollars in principal and interest payments from Plaintiffs on loans that the Plaintiffs did not owe and that the recipients did not have rights to collect. In addition, as a result of the fraud, MERS received thousands of dollars in fees to which it was not entitled, at Plaintiffs' expense. This money must be returned to Plaintiffs.

**RESPONSE:** Paragraph 186 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 186.

## EIGHTH CAUSE OF ACTION

AmericasActive:14411117.1

187.     Plaintiffs, adopt and incorporate by reference herein the allegations contained in the above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 186 of this Answer as if fully set forth herein.

188.     This action is brought pursuant to New York Real Property Actions and Proceedings Law, Article 15 and seeks the cancellation and discharge of record of the mortgages and interests in the real property identified in paragraph 41 hereof as the "Premises." The mortgages and interests in property that this action seeks to have cancelled and discharged are those interests in the Premises identified herein as: (1) the CEMA and (2) the BNY Mellon Assignment. In addition, this action seeks to correct the BofA Assignment to reflect the fact that the original loan amount of the transferred mortgage was $200,000.00, rather than the $900,000.00 that is incorrectly stated in the BofA Assignment.

**RESPONSE:** Paragraph 188 contains legal arguments and legal conclusions that do not require a response.  To the extent a response is required, MERS denies the allegations contained in Paragraph 188, except to state that the referenced documents speak for themselves and are the best evidence of their contents.

## NINTH CAUSE OF ACTION

### For Unfair and Deceptive Business Acts and Practices
### in violation of N.Y. Gen. Bus. Law. § 349 (All Defendants)

189.     Plaintiffs adopt and incorporate by reference herein the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 188 of this Answer as if fully set forth herein.

AmericasActive:14411117.1

190. At all relevant times, Defendants' conduct in marketing, advertising and promotion of its services was consumer oriented practices within the meaning of G.B.L. § 349.

**RESPONSE:** Paragraph 190 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 190, except to state that the referenced statute speaks for itself and is the best evidence of its contents.

191. The several fraudulent mortgages and assignments of mortgage filed and claimed by the Defendants, including the CEMA and the BNY Mellon Assignment, have clouded the title that Plaintiffs & Sharon Inc. holds in the Premises.

**RESPONSE:** Paragraph 191 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 191.

192. Plaintiffs' title has been clouded as a direct result of the Defendants' actions in assigning, acquiring, and filing the aforesaid fraudulent mortgages and assignments of mortgage.

**RESPONSE:** Paragraph 192 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 192.

193. Further, as a result of Defendants' conduct in clouding Plaintiffs title to the Premises, Plaintiffs have lost the loan for which it had been approved and have been unable to obtain a loan against the Premises.

**RESPONSE:** Paragraph 193 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 193.

194. G.B.L. § 349 provides that it is unlawful to employ a deceptive act or practice in the conduct of any business, trade or commerce in this state.

**RESPONSE:** Paragraph 194 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS states that the statute speaks for itself and is the best evidence of its contents.

195. Defendants conduct was materially misleading and did actually lull Plaintiff into a false sense of security.

**RESPONSE:** Paragraph 195 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 195.

196. Defendants' conduct is likely to mislead a reasonable consumer acting reasonably under the circumstances.

**RESPONSE:** Paragraph 196 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 196.

197. Defendants committed the following practices which violated G.B.L. § 349, including but not limited to:

- Imposition of unreasonable charges on the Plaintiffs' existing mortgage;
- Not reporting Plaintiffs' mortgage payments to the credit department;
- Not reporting Plaintiffs' mortgage payments to the credit bureaus;
- Not reporting Plaintiffs' mortgage satisfactions;
- Not properly recording mortgage satisfactions, assignments and other documents that impact upon consumer loans and consumer creditworthiness;
- Failing to address issues consumer issues (inclusive of those suffered by Plaintiffs); Identifying errors impacting consumers, homeowners and borrowers such as Plaintiffs but failing to correct those errors; and
- Helping coordinate and commence foreclosure action against persons similarly situated to Plaintiffs.

**RESPONSE:** Paragraph 197 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 197.

198. Upon information and belief, Defendants have conducted itself in such a manner in its general dealings with the public.

**RESPONSE:** MERS denies the allegations contained in paragraph 198.

199. Upon information and belief, Defendants has been the subject of many civil lawsuits regarding some, if not all, of these deceptive business practices.

**RESPONSE:** Paragraph 199 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 199.

200. Upon information and belief, Defendants violation(s) of G.B.L. § 349 occur on a wider scale impacting the public.

**RESPONSE:** Paragraph 200 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 200.

201. Each of the above actions were consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

**RESPONSE:** Paragraph 201 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 201.

202. Accordingly, Plaintiffs are damaged in an amount to be determined at a jury trial.

AmericasActive:14411117.1

**RESPONSE:** Paragraph 202 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 202.

203. Defendants, under G.B.L. § 349 are liable for such damages together with reasonable attorney's fees.

**RESPONSE:** Paragraph 203 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 203.

## TENTH CAUSE OF ACTION

### Declaratory Judgment

204. Plaintiffs, adopt and incorporate by reference herein the allegations contained in the above Paragraphs of this Amended Complaint as if fully set forth herein.

**RESPONSE:** MERS adopts and incorporates by reference herein the responses contained in Paragraphs 1 through 203 of this Answer as if fully set forth herein.

205. As a result of the conduct of Defendants, Plaintiffs' title to the Premises is clouded.

**RESPONSE:** Paragraph 205 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 205.

206. As has been shown, above, the various promissory notes and mortgages mentioned above, including the interests in the Premises identified herein as: (1) the Florida Capital Mortgage, (2) the CEMA, and (3) the BNY Mellon Assignment, as well as any promissory notes or debt instruments associated therewith, are all either invalid or are fully

satisfied. In addition, the BofA Assignment incorrectly states that the original debt that was subject to that assignment was for $900,000.00; this should be corrected to state that the original debt subject to that assignment was $200,000.00. The BofA assignment transferred only the Countrywide Mortgage, which is fully satisfied.

**RESPONSE:** Paragraph 206 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 206 and states that the documents referenced speak for themselves and are the best evidence of their contents.

207. Therefore, Plaintiffs request that the Court issue a judgment declaring that the Plaintiffs are the lawful owners and vested with an absolute and unencumbered title in fee simple absolute to Premises, free and clear of the promissory notes and mortgages mentioned above, including the interests in the Premises identified herein as: (1) the Florida Capital Mortgage, (2) the CEMA, and (3) the BNY Mellon Assignment, as well as any promissory notes or debt instruments associated therewith.

**RESPONSE:** Paragraph 207 contains legal arguments and legal conclusions that do not require a response. To the extent a response is required, MERS denies the allegations contained in Paragraph 207.

**FIRST AFFIRMATIVE DEFENSE**

1. Plaintiffs' claims are barred because Plaintiffs lack standing to assert any of the claims asserted in the Complaint.

**SECOND AFFIRMATIVE DEFENSE**

2. The claims in the Complaint, and each purported cause of action contained therein, fail to state a cause of action upon which relief can be granted.

AmericasActive:14411117.1

### THIRD AFFIRMATIVE DEFENSE

3.     By virtue of Plaintiffs' acts, conduct, or omissions, Plaintiffs are estopped from asserting that they are entitled to any recovery or relief with respect to any of the purported causes of action alleged in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

4.     Plaintiffs' claims are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

5.     Plaintiffs' claims are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

6.     Plaintiffs' claims are barred in whole, or in part, by the doctrine of unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

7.     Plaintiffs' claims are barred in whole, or in part, because MERS has acted in good faith.

### EIGHTH AFFIRMATIVE DEFENSE

8.     Plaintiffs' claims are barred, in whole or in part, by the statute of limitations.

### NINTH AFFIRMATIVE DEFENSE

9.     MERS reserves the right to amend this Answer up to and including the time of trial to include any affirmative defense that may become known or be discovered during the course of further discovery in this matter.

Dated:  February 14, 2020          Respectfully submitted,
        New York, New York

                                   */s/ Heather Elizabeth Saydah*
                                   Heather Elizabeth Saydah, Esq.
                                   Winston & Strawn LLP
                                   200 Park Avenue
                                   New York, NY 10166

AmericasActive:14411117.1

(212) 294-5312
hsaydah@winston.com

AmericasActive:14411117.1

<u>AFFIRMATION OF SERVICE</u>

I, Heather Elizabeth Saydah, declare under penalty of perjury that a true and correct copy of the foregoing ANSWER AND AFFIRMATIVE DEFENSES on behalf of Defendant Mortgage Electronic Registration Systems,. Inc. was filed by means of the U.S. District Court for the Eastern District of New York's Case Management/Electronic Case Filing (CM/ECF) on February 14, 2020.

Dated: New York, NY
           February 14, 2020


                    */s/ Heather Elizabeth Saydah*
                    Heather Elizabeth Saydah, Esq.

AmericasActive:14411117.1